Devine, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered December 5, 2014, convicting defendant upon his plea of guilty of the crime of attempted criminal possession of a controlled substance in the first degree.
On December 28, 2013, state troopers stopped defendant for driving a vehicle with excessively tinted windows on the New York State Thruway in the Town of Bethlehem, Albany County. A canine sniff of the car was conducted that gave grounds for a search, after which over half a kilogram of cocaine was retrieved from the vehicle. Defendant was arrested and charged in an indictment with criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree. Following an unsuccessful motion to suppress the drugs, defendant pleaded guilty to attempted criminal possession of a controlled substance in the first degree and was sentenced to eight years in prison and five years of postrelease supervision. Defendant now appeals, focusing upon the denial of his suppression motion.
We affirm. The traffic stop was made after troopers observed the excessively tinted windows on defendant’s vehicle and, as such, was justified (see Vehicle and Traffic Law § 375 [12-a] [b] [2]; People v Williams, 132 AD3d 1155, 1156 [2015], lv denied 27 NY3d 1157 [2016]). The limited detention that followed “ ‘must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance,’ unless circumstances arise which furnish the police with a founded suspicion that criminal activity is afoot” (People v Kelly, 37 AD3d 866, 867 [2007], lv denied 8 NY3d 986 [2007], quoting People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995]; see People v Garcia, 20 NY3d 317, 322-323 [2012]). The hearing evidence indicated that an average traffic stop lasts 15 or 20 minutes, and there is no dispute that the initial justification for the stop had dissipated before the canine sniff occurred (compare People v Banks, 85 NY2d at 562-563, with People v Rainey, 49 AD3d 1337, 1339 [2008], lv denied 10 NY3d 963 [2008]). Accordingly, the rub is whether the troopers had a founded suspicion of criminality that justified further inquiry and delay (see People v Garcia, 20 NY3d at 322; People v Banks, 85 NY2d at 562).
County Court heard testimony at the suppression hearing from both troopers involved in the traffic stop of defendant and found them credible, with the account given by State Trooper David Jimenez the most pertinent here. Defendant gave Jimenez his license, registration and proof of insurance, stating that he had been browsing at outlet stores downstate and *1361 was returning home to Albany County. The check of defendant’s documentation that followed disclosed that he was on parole. Defendant’s status as a parolee did not constitute a “surrender [of] his constitutional rights against unreasonable searches and seizures” (People v Huntley, 43 NY2d 175, 181 [1977]; see People v Porter, 101 AD3d 44, 47 [2012], lv denied 20 NY3d 1064 [2013]). Nevertheless, it was a relevant factor that “may well be significant” in assessing the reasonableness of the troopers’ subsequent conduct (People v Huntley, 43 NY2d at 181; see People v Driscoll, 101 AD3d 1466, 1467 [2012]).
Jimenez testified as to how defendant’s parole status, while not the cause of the canine sniff, played a major role in how the stop evolved after its inception. Jimenez understood from his prior experience that a parolee stopped for a traffic offense must immediately alert the officer to his or her status. Jimenez also knew from his interaction with other law enforcement officials that a parolee supervised in Albany County was not permitted to travel beyond an adjoining county without a written permission slip from his or her parole officer. Defendant had not told Jimenez of his parole status, then admitted that he did not have permission from his parole officer to travel to the outlet stores and had not asked for it.
This exchange occurred within the first 10 minutes of when the stop was made and, given the indications that defendant may have violated one or more conditions of his parole (see 9 NYCRR 8003.2 [c]), Jimenez properly sought to contact defendant’s parole officer in order to clarify the situation (see People v Harris, 186 AD2d 148, 148 [1992]). The contact information for the parole officer listed in the police cruiser’s computer was inaccurate, thwarting the efforts of Jimenez to call the parole officer and prompting him to ask defendant for the correct information. Defendant gave his parole officer’s name but not a phone number, claiming that his cell phone was broken and would not turn on. Defendant then explained, without any prompting and contrary to his earlier account of just wanting to browse, that he had gone to the outlet stores to get his phone fixed. Jimenez noticed that defendant was holding the cell phone battery in his hand, however, and the phone turned on with some screen damage after defendant replaced the battery.[1] Defendant then changed his story further when the confused troopers asked if he had gotten his phone fixed or not, relating first that he had ordered a replacement phone before eventually admitting that he had not ordered anything. The *1362 troopers, considering this disingenuous and avoidable exchange in light of defendant’s parole status and his nervousness throughout the traffic stop, notified defendant that a canine sniff would be conducted and summoned the canine unit. The troopers did so about 30 minutes into the traffic stop and the canine officer arrived about 20 minutes later, with the canine sniff occurring soon after.
The prolonged diet of inconsistencies and lies provided by defendant about his travels, when coupled with his parole situation and his nervous demeanor throughout the encounter, combined to give the officers a “founded suspicion of criminality” (People v Kenon, 291 AD2d 246, 247 [2002], lv denied 98 NY2d 652 [2002]; see People v Whalen, 101 AD3d 1167, 1168 [2012], lv denied 20 NY3d 1105 [2013]; People v Tejeda, 217 AD2d 932, 932-933 [1995], lv denied 87 NY2d 908 [1995]). This founded suspicion justified both the extension of the stop after its initial justification had been exhausted and the exterior canine sniff that followed (see People v Devone, 15 NY3d 106, 113-114 [2010]; see also United States v Moore, 795 F3d 1224, 1230-1231 [10th Cir 2015]; United States v Brigham, 382 F3d 500, 510-511 [5th Cir 2004]).[2] The dog alerted during the sniff and defendant’s contention regarding the reliability of that alert, an issue that was not advanced before County Court, is unpreserved for our review (see CPL 470.05 [2]; People v Neal, 133 AD3d 920, 921 [2015], lv denied 26 NY3d 1110 [2016]). The alert gave the troopers probable cause to search the vehicle and recover the bookbag from the back seat that contained cocaine (see People v Boler, 106 AD3d 1119, 1122 [2013]; People v Abdur-Rashid, 64 AD3d 1087, 1089 [2009], affd 15 NY3d 106 [2010]). Thus, County Court properly denied the motion to suppress the cocaine.
Rose and Mulvey, JJ., concur.

. Jimenez did not attempt to access any information in the cell phone, nor did he demand that defendant do so.

. Inasmuch as a founded suspicion existed to justify the canine sniff, we need not reach the issue of whether defendant also consented to the sniff.